[Civ. No. 17158.　First Dist., Div. Two.　Mar. 19, 1957.]

THE BOARD OF EDUCATION OF THE RICHMOND SCHOOL DISTRICT et al., Respondents, v. LEONICE E. MATHEWS, Appellant.

*Assigned by Chairman of Judicial Council.

Wagener, Brailsford & Knox for Appellant.

Francis W. Collins, District Attorney (Contra Costa), John B. Clausen and Charles L. Hemmings, Deputy District Attorneys, for Respondents.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of Contra Costa County decreeing that respondents may discharge appellant, a teacher employed by the Board of Education of the Richmond School District.

The proceedings herein were instituted under section 13521 of the Education Code which provides that no permanent employee may be dismissed except for one or more of the causes contained in that section. The subsections here involved are "(a) Immoral or unprofessional conduct; . . . (g) Persistent violation of or refusal to obey the school laws of the State or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district employing him."

Appellant, Miss Leonice E. Mathews, was charged in Cause I with persistent violation of or refusal to obey reasonable regulations of the Richmond School District in that she absented herself from her school during school hours for the week of October 12, 1953, and for the week of October 19, 1953, in violation of the rules and regulations of the district as contained in rule 3.44(e), Administrative Manual of the Richmond Schools, 1951, and absented herself or refused to report for duty on September 7, 1954, and continued to absent herself to date after having been ordered to report on September 7, 1954, by the district superintendent. Cause II charged her with refusal to obey reasonable regulations in failing to report for duty on September 7, 1954 after having been directed in writing by the district superintendent, and Cause III charged unprofessional conduct in that she breached her contract by failure or refusal to report on September 7, 1954, after being directed to do so.

Section 3.44(e) of the Administrative Manual of the Richmond Schools provides: "(e) Under no circumstances shall teachers be away from their assigned school during school hours unless permission has previously been obtained from the principal."

Section 3.45(a) provides that certificated personnel shall be allowed 10 days absence from duty on account of personal illness each school year without loss of salary, and section 3.46(b) reads in part as follows: "Leaves of absence for permanent employees shall be limited to sabbatical, further study, travel, maternity, or health leaves. Except for maternity or health leaves, the time limit for leaves of absence shall be one year."

Appellant contends that she had been given prior permission by school authorities, for on October 8 she requested a substitute teacher for Friday, October 9. The unexcused absences with which she is charged are, however for 10 school days in the weeks beginning October 12 and October 19, 1953. The

evidence shows that Miss Burkett, the principal, granted appellant permission to be absent on Friday, October 9, 1953, when she complained of a sore throat. There had been no conversation concerning leave for any time during the following two weeks. Leave or permission for that time had not been requested or granted. Dr. Miner, district superintendent of the Richmond School District, testified that when he called appellant to his office to explain the absence, she told him that it was too cold and nasty and foggy up here and that she had gone south to get warm. Appellant testified that she had left Richmond on Friday morning, October 9, and drove to her home in Los Angeles. She decided to return, she said, when Miss Burkett telephoned. Appellant said, ''I was so glad to hear her voice, all my interests in Richmond came rushing into my brain and I did feel ashamed I had been gone so long and it dawned then, I had been gone longer than I should have been. I was so glad to hear her voice wanting to know when I would be back and I said I would be back Monday.''

As to the absence beginning with appellant's failure to report for duty at the beginning of the school year, September 7, 1954, the record shows that on or about September 1, 1954, appellant sent Dr. Miner a letter telling him that she was not going to return at the beginning of the school year. He replied, directing her to report for duty at a certain school. He then received a telegram from her on September 6, 1954, conveying the information that she had been injured some time in July. This was the first time she informed him of the accident to her leg. She did not consult a doctor from the time of the alleged injury on July 20, 1954, until September 9, 1954. In her correspondence with Dr. Miner in regard to a leave, appellant at no time asked for leave for reasons of health. Her letters were requests for leave to take care of urgent business in Los Angeles. The urgent business was a dispute concerning a boundary encroachment on her home property. She requested Dr. Miner's permission to teach in another district during this time, or to allow her to do substitute teaching, which requests were not granted.

Dr. Groshell, the blind osteopathic physician and surgeon whom she consulted in Los Angeles, testified in his deposition that he was first consulted by Miss Mathews on September 9, 1954. She visited his office eight times in September and October, and only once a month between October 18 and January 11, 1955. The doctor stated that appellant had not been restricted in her movements, that a rubber knee bandage

would have probably been of sufficient help to permit her to carry on her duties as teacher, that he supposed she could have used crutches or a cane.

Appellant contends that the evidence does not establish persistent violation of or refusal to obey reasonable regulations of the Richmond School District. ■ The rules and regulations of the district which are in effect at the date of making or renewal of a teacher's contract are, of course, a part of the employment contract of every teacher. (*Rible* v. *Hughes,* 24 Cal.2d 437 [150 P.2d 455, 154 A.L.R. 137] ; *Kacsur* v. *Board of Trustees,* 18 Cal.2d 586 [116 P.2d 593], *Fry* v. *Board of Education,* 17 Cal.2d 753 [112 P.2d 229].) In *Rible* v. *Hughes* it is said that the contract of employment of a permanent teacher ''Is automatically renewed from year to year upon the same terms unless, prior to renewal, the school board acts to change such terms.''

■ Appellant argues that section 3.44(e) is unreasonable in that it does not provide for unforeseen emergencies. It provides that ''under no circumstances'' shall teachers be away from their schools unless prior permission has been obtained from the principal. Appellant has not shown that the rule has been unreasonably applied in her case, however. She secured a substitute for one day only, then drove to Los Angeles where she remained two weeks. Each day of that absence without notifying the school authorities as to the necessity therefor, was a violation of the rule. ■ A teacher who was sufficiently able-bodied to drive her car to Los Angeles can certainly not be heard to say that she was physically unable to ask permission for absence due to illness. When finally contacted in Los Angeles by the principal, she admitted that she felt ashamed that she had absented herself for so long, and said nothing about illness.

■ Appellant also maintains that section 3.44(e) has no application to illness because section 3.45 covers absence from duty for that reason. It states that certificated personnel shall be allowed absence from duty because of personal illness for 10 days of each school year without loss of salary. This rule would appear to make the granting of permission or excuse of absence under rule 3.44(e) mandatory by the principal for illness of a teacher. The very fact that the rule states that the teacher shall be ''allowed'' absence from duty implies that some authority is to be consulted by the teacher in the matter. The administration of a school would indeed be difficult if teachers could without notice depart for two

weeks at a time, even though in the interests of their health, without advising the school of the necessity for securing substitutes or the length of time for which they would be needed.

Appellant cites *Fresno City High School Dist.* v. *De Caristo,* 33 Cal.App.2d 666 [92 P.2d 668] in which it is said that two absences without leave may not be said to be a persistent course of conduct. The absences there related to absences on October 6 and October 21 in the same year. In the instant case we have absences on each day of the school week in two consecutive weeks or 10 absences as opposed to two in the cited case. Appellant also cites the language in that case to the effect that the notice of dismissal therein did not state, the amended complaint did not allege, and the findings of fact did not find that the absences from duty were not caused by appellant's sickness. However, in the cited case, the rule of the board of education there under consideration prohibited the teacher from absenting herself without permission "except in case of sickness." Hence, to show a violation of that rule, there would have to have been an allegation that the absence was not caused by illness.

It is urged by appellant that section 3.46(b) of the Manual of the Richmond School District was improperly applied to appellant, hence her conduct was not unprofessional under the circumstances. Section 3.46(b) at the time this action arose required all leaves of absence for permanent employees to be of one year's duration, except maternity or health leaves. Dr. Miner testified that the health leaves had been also changed to one year since the Richmond schools had gone on an annual promotion basis during the past three years. He admitted that there was nothing in the written regulations forbidding a health leave of less than a year, that the rules were under revision, but the change had not yet been adopted in writing. Under these circumstances, it would seem that appellant might be entitled to a health leave of a semester instead of a year, as insisted upon by the superintendent, for under *Rible* v. *Hughes,* 24 Cal.2d 437, 443 [150 P.2d 455, 154 A.L.R. 137], it appears that it is the rules and regulations which have been *adopted* which become a part of the teacher's contract.

In the present case, however, the evidence is subject to the inference that appellant was endeavoring to secure a leave for business reasons rather than for reasons of health. The nature of the business was such that it would most probably have

to have been taken care of by a lawyer, and she did in fact place it in a lawyer's hands. It did not reasonably require her constant presence in Los Angeles from September to February. The trial court found that appellant failed and refused to report for duty on September 7, 1954, and continued to absent herself without just cause or legal excuse until February 1, 1955, and without obtaining a leave of absence. If the trial court had believed that appellant's health was such that she could not teach, it could not have found that she was absent without just cause. Nor could it have done so if it believed that the nature of her business was of such gravity as to require her constant attention. The trial court's findings in these respects are supported by the record. It appears to be immaterial therefore, whether or not the superintendent was in error in insisting that a health leave must be of one year's duration, for in view of this finding, appellant was not entitled to leave.

Appellant's failure to report for duty after having been directed to do so by the superintendent, her absences being without just cause, constitutes a breach of her contract of employment, and is unquestionably unprofessional conduct. In *Board of Education* v. *Swan*, 41 Cal.2d 546, 551 [261 P.2d 261], it was said that in discussing a teacher's refusal to report for a teaching assignment that "a particular act or omission of a teacher may constitute unprofessional conduct, evident unfitness for service, and a persistent violation of or refusal to obey prescribed rules and regulations." The court further stated that "The refusal of a teacher to accept an assignment which the school authorities have the power to make constitutes a violation of school laws as ground for dismissal" citing numerous authorities. In *Evard* v. *Board of Education of the City of Bakersfield*, 64 Cal.App.2d 745 [149 P.2d 413], it was held that a teacher with permanent tenure who left her position before the expiration of the time specified in her contract without the consent of the trustees of her district, was guilty of unprofessional conduct, and subject to the statutory penalties prescribed.

It is clear that Cause I and Cause III of the charges against appellant are supported, and if either were supported it would sufficiently support the judgment herein. Respondent asks in regard to Cause II relating to the charge that appellant refused to obey reasonable regulations in failing or refusing to report for duty on September 7, 1954, after being directed to do so, that this court construe subsection (g) of section

13521 of the Education Code to require only a single refusal to obey a regulation as cause for dismissal in contrast to the requirement of "persistent" violation of a regulation to warrant such action. The section requires "Persistent violation of or refusal to obey the school laws . . . or reasonable regulations . . ." ▮ It is true as respondent argues, that we must presume that the Legislature did not enact useless words and that "violation" and "refusal" are not synonymous. There may be a violation of a rule without knowledge that the rule exists, whereas refusal to obey a rule implies knowledge of its existence. The word "persistent," however, would appear to modify both the words "violation" and "refusal." It would seem that if the same regulation is violated by two teachers, one of whom does it innocently and the other knowingly, the results are quite likely to be the same as far as school administration is concerned. It is the persistent disregard of the rules that this subsection appears to make sufficient basis for dismissal.

▮ In view of the language in *Board of Education* v. *Swan, supra,* and the evidence herein of appellant's repeated insistence on a leave for business reasons of one semester's duration, which she was not entitled to under the regulations, and her failure throughout this time to return to her assignment, the court might well have found a "persistent refusal" to obey the regulations of the school district. The trial court, however, merely found a "refusal" to obey such regulations in regard to Cause II.

▮ In view of the fact that the charges and findings of the lower court in connection with Cause I and Cause III are clearly supported by the evidence, the judgment must be affirmed.

Judgment affirmed.

Dooling, Acting P. J., and Stone, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.