## Walter A. WINSHIP

v.

## BREWER SCHOOL COMMITTEE.

Supreme Judicial Court of Maine.

Aug. 29, 1978.

---

Sunenblick, Fontaine & Reben by Donald F. Fontaine, Portland (orally), for plaintiff.

Eaton, Peabody, Bradford & Veague by Bernard J. Kubetz (orally), John E. McKay, Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

Brewer School Committee (hereinafter "the Committee") has appealed, seeking to reverse a decision of the Superior Court which reinstated Walter A. Winship to his teaching position at Brewer High School.

We deny the appeal.

On February 26, 1975, after conducting a hearing, the Committee issued a certificate of dismissal pursuant to 20 M.R.S.A. § 473(4),[1] in which it made the following findings:

"1. That on Thursday, January 30, 1975, the said Walter A. Winship engaged in a shouting match with . . . a sophomore [female] student in the general mathematics class being conducted by the said Walter A. Winship, resulting in the said Walter A. Winship *striking* [the student] with a chair, *after* having directed that the [student] leave the room, the said *striking* taking place as she was leaving the room.

2. The said chair did cause injury and pain to the [student] and did cause an emotional upset to the [student].

3. The said Walter A. Winship did further place his hand on the back of the neck of said [student] and forcibly eject her from the classroom.

4. While the said [student's] attitude and demeanor in the classroom were objectionable, the conduct of [the student] did not, in any way, justify the physical actions taken by the said Walter A. Winship.

5. Based upon the testimony of all of the witnesses, it is clear that profanity is used in classes conducted by the said Walter A. Winship, that he, Walter A. Winship does use profanity and that students in his classes also use profanity and obscene language.

6. The classes conducted by the said Walter A. Winship and specifically, the sophomore general mathematics class, are often noisy and unruly, and the said sophomore general mathematics class was noisy and unruly on January 30, 1975. The charge, however, that the said classes are disturbing to other classes and teachers in the vicinity of the classes being conducted by the said Walter A. Winship is *not sustained*.

Based upon the foregoing findings of fact, it is the decision of this Committee that:

1. The said Walter A. Winship is *unfit to teach* in the Brewer School System; and

2. The *services* of the said Walter A. Winship are *unprofitable* to the Brewer School System." (emphasis supplied)

---

[1] "Teachers dismissed. After investigation, due notice of hearing, and hearing thereon, they shall dismiss any teacher, although having the requisite certificate, who proves *unfit to teach* or whose services they deem *unprofitable to the school*; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain. . . ." (emphasis supplied)

Mr. Winship filed a complaint seeking judicial review of the Committee's decision pursuant to Rule 80B, M.R.Civ.P. The complaint alleged, *inter alia*, a lack of substantial evidence to support the Committee's findings.

A single Justice of the Superior Court, utilizing the record of the testimony taken at the Committee hearing conjoined with testimony and exhibits received in evidence before him, after noting his authority to review the Committee's decision for errors of law, concluded that since the dismissal was

> "not supported by substantial evidence of a causal or reasonable relation between findings # 1–4 and the policy underlying the statutory grounds for dismissal,"

that "the dismissal of the Plaintiff pursuant to 20 M.R.S.A. § 473(4) cannot be upheld." The Justice reasoned as follows:

> "To uphold a dismissal on the grounds of unprofitability to the school, a single classroom incident would have to have grave adverse implications upon the future relationship between the teacher and his colleagues or administrators, or upon the relations between the school and its surrounding community.";

and:

> "The test for upholding a dismissal for unfitness is now whether the facts found by the committee as supported by the record demonstrate an 'undermining' of the teacher's future classroom performance and overall impact on his students."

In a subsequent order the Justice below concluded in part as follows:

(1) "[S]ubstantial evidence does not support the Committee's derivative findings # 5 and # 6 in the notice of dismissal.

(2) These findings (1 through 4) are supported by substantial evidence only if a particular interpretation is given to the word 'striking' in finding # 1. . . . The chair was held with the back horizontal at approximately

chest height by the Plaintiff; the legs of the chair faced away from the Plaintiff. In this elevated position the Plaintiff carried the chair for a few steps toward the student and 'pushed' it toward the student. . . . The chair was not thrown or released by the Plaintiff in the direction of the student, but the push was of sufficient force that upon contact the student stumbled backward approximately two to four feet."

On December 3, 1975, the Court held another hearing which was limited to the issues of damages and declaratory or injunctive relief. Subsequently, a "Final Judgment and Order" was filed, sustaining the plaintiff's appeal, mandating the plaintiff's reinstatement as of April 12, 1976, and awarding judgment to the plaintiff for damages in the amount of $10,346.00.

I

The Committee contends that an examination of the transcript of the hearing before it reveals substantial evidence to support its factual findings 1 through 4.[2] In addition, it argues that the Court exceeded the proper scope of review by conducting a "de novo factual evaluation" of the evidence.

In *Wright v. Superintending School Committee*, Me., 331 A.2d 640, 646 (1975), where we sustained the appeal of a teacher who had been dismissed pursuant to 20 M.R.S.A. § 473(4), we noted

> "that in a Rule 80B review, the Court below was without authority to overrule findings of fact supported by *substantial evidence*." (emphasis supplied)

*See also Fernald v. City of Ellsworth Superintending School Committee*, Me., 342 A.2d 704, 707 (1975).

The "substantial evidence" standard of review of decisions of administrative agencies requires

---

2. The Committee does not now contend that the Superior Court erred in ruling there was a lack of substantial evidence to support the

Committee's findings 5 and 6. We, therefore, give this issue no further consideration.

"the reviewing court to 'search the entire record . . . to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did." *In Re Maine Clean Fuels, Inc.*, Me., 310 A.2d 736, 741 (1973), *citing Braniff Airways, Incorporated v. C. A. B.*, 126 U.S.App. D.C. 399, 408, 379 F.2d 453, 462 (1967).

■ With regard to the Committee's findings 1 through 4, the Superior Court held that these findings were supported by substantial evidence "only if a particular interpretation is given to the word 'striking' in finding #1." At the hearing before the Committee, there was conflicting testimony as to whether appellee "threw" the chair at the student or merely "pushed" her with it. Of those who actually witnessed the incident, however, only the student herself testified that appellee "threw" the chair. On direct examination she stated that the teacher "hit" her with his desk chair. On cross-examination, when asked if he "pushed" her with the chair, she responded affirmatively. She admitted on cross-examination that at one point she had changed her mind and had informed the school principal that appellee did not throw the chair at her. Later, however, upon further cross-examination by a member of the Committee, she insisted that the chair was thrown at her. Given the equivocal nature of the student's testimony, we believe the Court acted within the appropriate scope of review when it sought, in the so-called "de novo factual evaluation," to clarify the meaning of the word "striking" as used in the Committee's findings.

## II

The Committee next contends that its findings relevant to the classroom incident support the dismissal of Winship on the basis that his services had become unprofitable to the school system.

We disagree.

■ The Superior Court correctly observed that the question of whether there is a causal connection between the Committee's findings of fact and the statutory grounds for dismissal is a question of law subject to judicial review. *Fernald, supra* at 707.

■ Therefore, if the teacher's dismissal is to be sustained on the basis of his "unprofitability" to the school, there must be some showing that his usefulness has been impaired and that the good of the school requires his dismissal. *Fernald, supra* at 708; *Hopkins v. Inhabitants of Bucksport*, 119 Me. 437, 441, 111 A. 734, 736 (1920). Our review of the record supports the conclusion reached by the Superior Court, namely, "[n]o causal or reasonable relation between the Plaintiff's conduct and the statutory dismissal cause of unprofitability to the school was proven." We note that the certificate of dismissal did not state as a fact *how* the usefulness of Mr. Winship has been impaired or *why* the good of the school required his dismissal. Nor do we find any testimony or other evidence of a substantial nature in the record which would support the Committee in arriving at such a conclusion. As we pointed out in *Fernald, supra* at 707, "it is highly desirable, under the statutory grounds for dismissal, that school committees prove insofar as possible by factual demonstration the deleterious consequences of the alleged teacher misconduct." This was not done.

## III

The Committee further argues that the record of the incident supports Winship's dismissal "as unfit to teach." The Committee admits in its brief that the issue becomes whether it was warranted in concluding that the single incident—"the striking of a female student with a chair and physically ejecting her from the classroom by grabbing her by the back of the neck"—constitutes unfitness to teach.

■ In determining whether a single incident of teacher misconduct constitutes unfitness to teach,

"[t]he facts of each case must be evaluated in terms of whether the character and degree of the act have so impaired

the services of the teacher in properly instructing his students that he may be said to be incapable of or unsuited to teaching.' "

*McLaughlin v. Machias School Committee*, Me., 385 A.2d 53, 56 (1978), *citing Wright, supra* at 647 n.3.

In *McLaughlin* we held there was a rational basis for the decision of the Machias School Committee's dismissal of a physical education teacher and coach as a result of a single incident of misconduct. The teacher in *McLaughlin* was participating in a "pick-up" game of basketball at Machias High School with a number of students when the incident occurred. At some point during the game, one of the students pushed the teacher while he was in the act of shooting a basket. The teacher responded by striking the student with a single blow of his hand, causing *serious* damage to the teeth and facial area of the student. At the hearing before the Machias School Committee, the Superintendent of Schools explained in his testimony that a physical education teacher or coach must teach by example and, therefore, this incident affected his ability to teach effectively.

■ We believe the facts of the instant case are distinguishable from those in *McLaughlin.* First, the incident here occurred in a classroom setting where the teacher was attempting to discipline a student whose classroom "attitude and demeanor" were indisputably "objectionable." [3] Second, the Committee did not characterize the "striking" incident as causing *serious* damage. Third, and most important in our view, there was no evidence before the Committee from which it could conclude that Winship's future classroom performance and overall impact on his students would be impaired. On the contrary, a review of the testimony heard by the Committee reveals that Winship's future effectiveness as a teacher in all likelihood would not be diminished as a result of the inci-

dent. Several of his students testified that they hoped he would continue in his capacity as a mathematics teacher at Brewer High School. In fact, one student described the results of a petition drive in support of Winship in which some four hundred and twenty-six signatures of students and alumni of Brewer High School had been obtained.

We therefore hold that on this record there was a lack of substantial evidence to support the Committee's ultimate conclusion that Winship was "unfit to teach."

### IV

We now turn to the Committee's position with regard to damages.

■ First, it is argued that the Court erred in computing damages for lost earnings for the 1975–76 academic year on the basis that "in all probability Plaintiff would have received a step increase in salary to $11,229.00." Our review of the record supports the conclusion of the Court below and, therefore, we find no merit to this claim. *See Miller v. Board of Education of Sch. Dist., Number 132*, 98 Ill.App.2d 305, 240 N.E.2d 471 (1968).

■ Secondly, it is argued that the Court erred in awarding $2,500.00 in consequential damages "in the form of mental anguish, physical suffering, humiliation and injury to his personal and professional reputation."

We agree with the Committee's position on this issue.

Winship's employment was governed by a contract. At the time this contract was executed both parties must be presumed to have known that unfitness to teach and/or unprofitability to the school system would justify terminating the contract. 20 M.R. S.A. § 473(4). There is no suggestion in the record that the Committee acted otherwise than in good faith. Under the circumstances the Committee was compelled to hold a hearing as provided by Section 473(4).

---

**3.** Because Winship had announced that this student was to be given a zero grade for failing to do a requested classroom assignment, she became enraged, and intermingled disrespect-

ful language with obscenities, and advanced toward the teacher holding a pen as if to stab him with it.

In actions premised on breach of contract the general rule allows recovery of those damages which were reasonably within the contemplation of the contracting parties when the agreement was made and which would naturally flow from a breach thereof. *Susi v. Simonds*, 147 Me. 189, 85 A.2d 178 (1951); *Bennett v. Dyer*, 102 Me. 361, 66 A. 725 (1907).

The elements of damage comprising the $2,500.00 award are not encompassed within the foregoing concept. A good faith effort to hold a statutorily required hearing cannot be the foundation on which to base a claim for this type of consequential damage. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *see also Miller v. Board of Education of Sch. Dist., Number 132, supra.*

The entry is:

Appeal denied except as to the award of $2,500.00 for consequential damages.

Remanded to the Superior Court for entry of judgment in accordance with this opinion.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.